# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**DOUGLAS R. MILLER**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7770
MDD_DRMChambers@mdd.uscourts.gov

July 24, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Vahn W. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-3122-DRM

Dear Plaintiff and Counsel:

On October 28, 2024, Plaintiff Vahn W. ("Plaintiff"), proceeding *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF No. 8) and the parties' filings (ECF Nos. 10, 12, 13, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on May 26, 2020, alleging a disability onset of December 1, 2018. Tr. 177-85. Plaintiff's claims were denied initially and on reconsideration. Tr. 90-92, 99-101. On June 30, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 30-68. Following the hearing, on September 22, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 12-24. The Appeals Council denied Plaintiff's request for review. Tr. 1-3. This Court remanded Plaintiff's case on January 9, 2023,

---

[1] Plaintiff filed this case against (1) "Scott Massengill, Administrative Law Judge"; (2) "Mr. Simmons, Case Worker"; (3) "Mr. Imadojemun, Supervisor"; (4) and the "SSA" on October 28, 2024. ECF No. 1. It is well-established that only the Commissioner is a proper defendant in an action under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 422.210(d) (stating that in all civil actions arising out of the denial of disability benefits, "the person holding the Office of the Commissioner [of Social Security] shall, in his official capacity, be the proper defendant."). Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Vahn W. v. Bisignano*
Civil No. 24-3122-DRM
July 24, 2025
Page 2

to the Commissioner for further consideration pursuant to 42 U.S.C. § 405(g). Tr. 826. On June 11, 2024, the ALJ held another hearing. Tr. 764-804. On June 27, 2024, the ALJ concluded that Plaintiff was disabled as of September 29, 2022, but not before that date. Tr. 735-55. The second ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since the date of application, May 26, 2020." Tr. 741. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "post-traumatic stress disorder (PTSD), depression, anxiety, spine disorders, substance addiction disorder (drugs), dysfunction of the knee joint, aortic aneurysm, and hernia." Tr. 741. The ALJ also determined that Plaintiff suffered from the non-severe impairments of hypertension and asthma and found Plaintiff's alleged left hand numbness to be non-medically determinable. Tr. 742. At step three, the ALJ determined that Plaintiff, since December 1, 2018, "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 742. Despite these impairments, the ALJ determined that, prior to September 29, 2022, the date Plaintiff became disabled, Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except able to stand/walk up to 4 hours in an 8-hour workday. Able to sit up to 6 hours in an 8-hour workday. Never able to climb ladders, ropes, or scaffolds. Occasionally able to climb ramps or stairs. Occasionally able to balance, stoop, and crouch. Never able to kneel or crawl. Limited to frequent use of the left upper extremity for fine fingering or grasping/handling of small objects. Avoid work at unprotected heights. Able to work at a position which is posturally immaterial, such that it can be performed either sitting, or standing. Able to carry out simple instructions and routine, repetitive tasks. Able to use commonsense understanding to carry out detailed, but uninvolved instructions. Avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others). Able to perform work activities for up to 2

*Vahn W. v. Bisignano*
Civil No. 24-3122-DRM
July 24, 2025
Page 3

> hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated by normal breaks. Occasionally able to change work activities or work settings during the workday without being disruptive. Occasionally able to deal with changes in a routine work setting. Able to have frequent interaction with supervisors, co-workers, and the public.

Tr. 746.

> The ALJ also determined that, since September 29, 2022, Plaintiff has had the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a) except never able to climb ladders, ropes, or scaffolds. Occasionally able to climb ramps or stairs. Occasionally able to balance, stoop, and crouch. Never able to kneel or crawl. Limited to frequent use of the left upper extremity for fine fingering or grasping/handling of small objects. Avoid work at unprotected heights. Able to work at a position which is posturally immaterial, such that it can be performed either sitting, or standing. Able to carry out simple instructions and routine, repetitive tasks. Able to use commonsense understanding to carry out detailed, but uninvolved instructions. Avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others). Able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated by normal breaks. Occasionally able to change work activities or work settings during the workday without being disruptive. Occasionally able to deal with changes in a routine work setting. Able to have frequent interaction with supervisors, coworkers, and the public.

Tr. 751-52. The ALJ determined that Plaintiff had no past relevant work. Tr. 753. The ALJ noted that prior to the established disability onset date, Plaintiff was a younger individual age 18-49, and that since the established disability onset date, Plaintiff's age category changed to an individual closely approaching advanced age. Tr. 753. The ALJ determined that, prior to September 29, 2022, Plaintiff could perform jobs that existed in significant numbers in the national economy. Tr. 754. However, beginning September 29, 2022, Plaintiff's sedentary RFC and age category of an individual closely approaching advanced age rendered him disabled under Medical Vocational Rule 201.12. Tr. 754. Therefore, the ALJ concluded that Plaintiff "was not disabled prior to September 29, 2022, but became disabled on that date and has continued to be disabled through the date of this decision." Tr. 754. The ALJ determined that Plaintiff's "substance use disorder(s) is not a contributing factor material to the determination of disability." Tr. 754.

### III.    LEGAL STANDARD

> The scope of the Court's review is limited to determining whether substantial evidence

*Vahn W. v. Bisignano*
Civil No. 24-3122-DRM
July 24, 2025
Page 4

supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

When reviewing a *pro se* Social Security appeal, the Court must "(1) examin[e] whether the SSA's decision generally comports with regulations, (2) review[ ] the ALJ's critical findings for compliance with the law, and (3) determin[e] from the evidentiary record whether substantial evidence supports the ALJ's findings." *Young R. v. Comm'r Soc. Sec. Admin.*, No. SAG-18-2980, 2019 WL 2078637, at *1 (D. Md. May 10, 2019) (quoting *Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005)).

## IV.    ANALYSIS

On appeal, Plaintiff challenges the ALJ's evaluation of the medical evidence and argues that the "actual date of [his] disability" should be December 1, 2018.[3] *See* ECF Nos. 10, 13, 14. Plaintiff does not clearly explain how the SSA erred. The Court will liberally construe Plaintiff's correspondence to consider, among others, whether the SSA's decision comported with regulations and complied with the law, and whether substantial evidence supports the ALJ's decision. *See Young R.*, 2019 WL 2078637, at *1. Defendant counters that substantial evidence supports the ALJ's decision and that the ALJ applied the correct legal standards. ECF No. 12, at 7-16.

After careful review of the ALJ's opinion and the record, the Court finds that the ALJ's decision applied the correct legal standards, and the conclusions are supported by substantial evidence. The ALJ considered Plaintiff's allegations, properly evaluated Plaintiff's medical records, and proceeded in accordance with the applicable law. *See* 20 C.F.R. §§ 404.1520, 416.920 (describing the SSA's five-step sequential evaluation for determining disability). At step one, the ALJ found in Plaintiff's favor, determining that Plaintiff had not engaged in substantial gainful activity since the date of application, May 26, 2020. Tr. 741; *see* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

At step two, the ALJ considered the severity of each of the impairments that Plaintiff

---

[3] Plaintiff argues that the "actual date of [his] disability should be December 1, 2018." ECF No. 10. However, the ALJ noted that "supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335)," but that the ALJ "has considered the complete medical history consistent with 20 CFR 416.912(d)." Tr. 739. As such, the period at issue begins May 26, 2020—the application date.

*Vahn W. v. Bisignano*
Civil No. 24-3122-DRM
July 24, 2025
Page 5

claimed prevented him from working, finding Plaintiff's "post-traumatic stress disorder (PTSD), depression, anxiety, spine disorders, substance addiction disorder (drugs), dysfunction of the knee joint, aortic aneurysm, and hernia" to be severe because the impairments "significantly limits the ability to perform basic work activities." Tr. 741; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ also found Plaintiff's hypertension and asthma to be non-severe because the impairments did not "result in more than a minimal limitation in [Plaintiff's] ability to perform work-related activities when properly treated" and found Plaintiff's alleged left hand numbness to be a non-medically determinable impairment because "the record does not disclose sufficient objective medical evidence to substantiate this medical condition." Tr. 742. The ALJ also noted that he considered the impact Plaintiff's obesity had on his symptoms, pursuant to Social Security Ruling ("SSR") 19-2p. Tr. 741.

At step three, the ALJ determined that Plaintiff's physical and mental impairments did not meet or medically equal the criteria of any listings. Tr. 742; *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In order to meet the requirements of a listed impairment, a claimant must meet all of the elements of the listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Hays v. Sullivan*, 907 F.2d 1453, 1456-58 (4th Cir. 1990). The ALJ determined that Plaintiff's physical impairments could not satisfy all the elements for Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)) concluding "there is no medical evidence of disorders of the skeletal spine resulting in compromise of a nerve root(s), documented by [paragraphs] A, B, C, and D[.]" Tr. 742. The ALJ also determined that Plaintiff's physical impairments could not satisfy all the elements for Listing 1.18 (abnormality of a major joint(s) in any extremity) concluding "there is no medical evidence of abnormality of a major joint(s) in any extremity documented by [paragraphs] A, B, C, and D[.]" Tr. 743.

Also at step three, the ALJ determined that Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.04, 12.06, 12.11, and 12.15. Tr. 744. The ALJ found that, under the "paragraph B" criteria, Plaintiff had moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; interacting with others; and adapting or managing oneself. Tr. 744-45. The ALJ also determined that Plaintiff did not satisfy the paragraph C criteria because the "record does not show that [Plaintiff] has only marginal adjustment, that is, a minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of his daily life" and Plaintiff "does not have a mental disorder that is both 'serious and persistent,' as defined by the regulations." Tr. 746.

Next, the ALJ evaluated Plaintiff's RFC by assessing the extent to which his impairments limited his ability to work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's RFC is "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). An RFC assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. §§ 404.1545(b) and 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing,

*Vahn W. v. Bisignano*
Civil No. 24-3122-DRM
July 24, 2025
Page 6

pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work." 20 C.F.R. §§ 404.1545(b), 416.945(b); *see* SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work of which the ALJ believes the claimant to be capable. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (holding that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested'") (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" SSR 96-8p, 1996 WL 374184, at *7. Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

The ALJ concluded that, despite Plaintiff's impairments, prior to September 29, 2022, Plaintiff maintained the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except able to stand/walk up to 4 hours in an 8-hour workday. Able to sit up to 6 hours in an 8-hour workday. Never able to climb ladders, ropes, or scaffolds. Occasionally able to climb ramps or stairs. Occasionally able to balance, stoop, and crouch. Never able to kneel or crawl. Limited to frequent use of the left upper extremity for fine fingering or grasping/handling of small objects. Avoid work at unprotected heights. Able to work at a position which is posturally immaterial, such that it can be performed either sitting, or standing. Able to carry out simple instructions and routine, repetitive tasks. Able to use commonsense understanding to carry out detailed, but uninvolved instructions. Avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others). Able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated by normal breaks. Occasionally able to change work activities or work settings during the workday without being disruptive. Occasionally able to deal with changes in a routine work setting. Able to have frequent interaction with supervisors, co-workers, and the public.

Tr. 746. The ALJ engaged in a narrative discussion of Plaintiff's medical evidence and cited to specific evidence in the record. Tr. 748-51. The ALJ offered a logical explanation of how this evidence, along with Plaintiff's testimony, and the opinions of medical professionals, led to the conclusion that Plaintiff can perform a reduced range of light work, with other physical and mental limitations. Tr. 747-51. The ALJ considered Plaintiff's "admitted daily activities" and explained how these activities do not support a finding of disability. Tr. 747. Despite Plaintiff's hearing testimony, the objective medical evidence examined by the ALJ supported their conclusion that

*Vahn W. v. Bisignano*
Civil No. 24-3122-DRM
July 24, 2025
Page 7

Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not fully supported prior to September 29, 2022." Tr. 747. The Fourth Circuit has held that "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595.

As to Plaintiff's physical impairments, the ALJ found Dr. W. Goo's and Dr. E. Harris's opinions, "stating the spine disorders, hernias, and joint dysfunction limit [Plaintiff] to light work with occasionally climbing ramps and stairs, ropes, ladders and scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling, of partial persuasive value." Tr. 750. The ALJ found that the "exertional and postural limitations are partially consistent with the record." Tr. 750. The ALJ determined that Plaintiff's "documented complaints of lower back pain, and right knee pain supported by MRI imaging of the lumbar spine revealing mild to moderate foraminal stenosis, with no significant spinal canal stenosis, and x-ray imaging of the right knee showing moderate joint space narrowing" and concurrent physical examinations "support a further reduction to standing and walking up to 4 hours in an 8-hour workday; never climbing ladders, ropes, or scaffolds; never kneeling or crawling; frequent use of the left upper extremity for fine fingering, grasping, or handling of small objects; no work at unprotected heights; and work that can be performed either sitting, or standing." Tr. 750. The ALJ's evaluation of these medical opinions comported with the requirements of 20 C.F.R. § 404.1520c.

As to Plaintiff's mental impairments, when a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, as *Mascio* explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (quoting *Mascio*, 780 F.3d at 638). An ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other

*Vahn W. v. Bisignano*
Civil No. 24-3122-DRM
July 24, 2025
Page 8

words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

The ALJ found Dr. P. Cott's and Dr. F. Ewell's opinions "stating generally that [Plaintiff's] neurodevelopmental disorders result in moderate limitations in understanding, remembering or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting or managing oneself, partially persuasive." Tr. 750. Among other things, Dr. P. Cott and Dr. F. Ewell opined that Plaintiff was moderately limited in the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 76, 87. The ALJ found the limitations "consistent with [Plaintiff's] complaints of anxiety, depression, and PTSD associated with depressed and anxious mood, irritability, difficulty with task completion, and concentration, and his history of substance abuse with treatment records reflecting symptom improvement following his discontinuance of substance abuse," and "is supported by his mental status examinations that show that his mood is anxious, irritable, and depressed, yet he remains cooperative and polite with good eye contact, he is fully oriented, and that he displayed normal speech, intact memory, fair to good judgment, and logical and goal-directed thought processes." Tr. 750. The ALJ found Dr. P. Cott's limitation "to very short, simple instructions" as "not supported by the record, which generally reflects intact memory." Tr. 751. The ALJ's evaluation of these medical opinions comported with the requirements of 20 C.F.R. § 404.1520c.

Given the ALJ's adoption of the Dr. P. Cott's and Dr. F. Ewell's opinions as to Plaintiff's CPP limitations, the ALJ's decision provides the requisite "logical bridge" connecting the evidence of Plaintiff's concentration issues to the RFC provision restricting Plaintiff from performing work requiring a high-quota production-rate pace. *Woods*, 888 F.3d at 694. As such, the Court determines that Dr. P. Cott's and Dr. F. Ewell's opinions "provided substantial support" for the mental RFC assessed in this case and that the ALJ's adoption of these opinions permits meaningful review. Tr. 746, 750-51; *see also Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis[.] Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC."). Moreover, this Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation. *See, e.g., Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S.*, 2022 WL 1721192, at *3 (holding that the ALJ accounts for Plaintiff's moderate CPP limitations when limiting Plaintiff to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Additionally, another district court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . .

*Vahn W. v. Bisignano*
Civil No. 24-3122-DRM
July 24, 2025
Page 9

restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

As such, the RFC assessment finds support in the weight that the ALJ assigned to the opinions of persuasive medical sources. *See* Tr. 750-51. The ALJ permitted meaningful review by incorporating the RFC assessment of persuasive sources into the ALJ's own RFC assessment as to Plaintiff's physical and mental limitations. *See Sizemore*, 878 F.3d at 80-81 (holding that an ALJ adequately supported limitations in the RFC assessment by assigning persuasive value to the opinions of doctors who addressed the limitations in detail); *Onishea*, 116 F. App'x at 2 ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis of her exertional limitations. Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in [assessing] RFC.").

The ALJ then explained why, as of September 29, 2022, Plaintiff's RFC changed to an ability to perform less than the full range of sedentary work with additional exertional, postural, environmental, and mental limitations. Tr. 751-53. The ALJ noted that on September 29, 2022, Plaintiff "presented with both chronic back pain, and right lower extremity pain, which continued to increase, and failed to respond to nonoperative pain measures," and "imaging studies revealed advanced disc degeneration." Tr. 752. The ALJ observed that Plaintiff was "treated via lumbar laminectomy and fusion." Tr. 752. The ALJ concluded that the less than full range of sedentary work RFC and the "exertional, postural, and the environmental limitations are supported by medical evidence as of the established onset date of disability demonstrating an increase in the severity of [Plaintiff's] lumbar symptoms[.]" Tr. 752-53. The ALJ also found that Plaintiff's "mental limitations are consistent with [Plaintiff's] continued treatment for depression, anxiety, and PTSD associated with panic attacks, anxiety, and depression" as well as his mental status examinations. Tr. 753.

At step four, the ALJ determined Plaintiff had no past relevant work. Tr. 753; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, in accordance with the vocational expert's testimony, the ALJ determined that, prior to September 29, 2022, a person with Plaintiff's reduced range of light work RFC could perform jobs that existed in significant numbers in the national economy, including checker I (DOT[4] #222.687-010), routing clerk (DOT #222.587-038), and

---

[4] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

paper pattern inspector (DOT #649.687-018). Tr. 753-54, 61-62; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Because the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform prior to September 29, 2022, the ALJ appropriately concluded that Plaintiff was not disabled before that date. Tr. 754; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) ("If [the claimant] can make an adjustment to other work, [the SSA] will find that [the claimant is] not disabled."). The ALJ next determined that beginning on September 29, 2022, considering Plaintiff's age, education, work experience, and sedentary RFC, "a finding of 'disabled' is directed by Medical-Vocational Rule 201.12." Tr. 754. As such, the ALJ concluded that Plaintiff was not disabled prior to September 29, 2022, but became disabled on that date and continued to be disabled through the date of the ALJ's decision. Tr. 754-55.

Ultimately, the Court's review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig*, 76 F.3d at 589. Even if there is other evidence that may support Plaintiff's position,[5] the Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). In considering the entire record, and given the evidence outlined above, the Court finds that the ALJ supported the decision with substantial evidence and applied the correct legal standards.

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge

---

[5] It is not the Court's function on review to parse a voluminous record in search of evidence that may undermine (or support) the ALJ's conclusions. *See, e.g.*, *U.S. ex rel. Davis v. Prince*, No. 1:08-cv-1244, 2011 WL 2749168, at *3 (E.D. Va. July 13, 2011) ("It is not the Court's responsibility to undertake the herculean task of reviewing a voluminous record to find evidence to support each party's position.").